IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 17-cv-1001-WJM-MEH

ADA-ES, INC.,

    Plaintiff,

v.

BIG RIVERS ELECTRIC CORPORATION,

    Defendant.

---

## ORDER *SUA SPONTE* TRANSFERRING CASE

---

Plaintiff ADA-ES ("Plaintiff" or "ADA") brings this action alleging fraud (ECF No. 20 at 6, ¶¶ 36–39), unjust enrichment (*id*. at 7, ¶¶ 46–47), breach of UCC warranties (*id.* at 11, ¶¶ 68–69), and breach of contract (*id*. at 11–12, 72–76). ADA is a Colorado based company that manufactures and installs Dry Sorbent Injection Systems ("DSI system"), which are incorporated into power plants to reduce sulfur trioxide ("$SO_3$") emission levels. (*Id*. at 2–3, ¶¶ 6, 12–13.) The DSI system "inject[s] a powdered sorbent (a substance with certain chemical properties that allows it to bond with certain pollutants) into the power plant system where the exhaust gas is produced in order to bind with, capture, and sequester the $SO_3$ gas." (*Id*. at 3, ¶ 13.) Defendant Big Rivers Electric Corporation ("Defendant" or "Big Rivers") is a Kentucky-based electrical corporation which owns power plants. (ECF No. 27 at 1.)

ADA entered into a contract ("Contract") with Big Rivers to manufacture, deliver, and install a DSI system in Big Rivers' Wilson power plant, located in Kentucky. (ECF

No. 20 at 2, ¶ 7; ECF No. 27 at 1.) The Contract included a Performance Guarantee that the DSI system would reduce $SO_3$ emissions to less than five parts per million (ppm) when a specified amount of sorbent was consumed under conditions that were set forth in ADA's Performance Guarantee. (ECF No. 20 at 3, ¶ 20.) The Contract also specified Performance Guarantee Test Procedures, which called for the use of high reactivity hydrated lime as the sorbent. (*Id.* at 3, ¶ 16.)

Big Rivers conducted a performance test using basic hydrated lime, but the DSI system failed to reduce $SO_3$ emissions to below 5 ppm. (*Id.* at 4, ¶¶ 21–23.) ADA advised Big Rivers to conduct the performance test again using high reactivity hydrated lime, but Big Rivers again conducted the test using basic hydrated lime and the DSI system again failed to reduce $SO_3$ emissions to below 5 ppm. (*Id.*) ADA alleges that after the second failed performance test, Big Rivers issued a demand in the amount of $605,458.78 in actual and liquidated damages. (*Id.* at 4, ¶ 24.) According to ADA, Big Rivers then withheld $563,382.56 of contractually owed payments. (*Id.* at 4, ¶ 25.) In a letter dated September 1, 2016, ADA formally rejected Big Rivers' claim that ADA had breached the Contract. (*Id.* at 4, ¶ 26.) In that same letter, ADA explained that even if there were a breach of Contract, per the Contract, Big Rivers could only recover liquidated damages, which were capped at 10% of the Contract. (*Id.*) ADA alleges that in spite of these terms, in addition to the withheld contract payments, Big Rivers withdrew the entire $807,651.00 Letter of Credit ("Letter of Credit") funds by delivering a letter to a bank in Denver, which letter fraudulently stated that ADA had failed to fulfil its obligations under the Contract. (*Id.* at 4–5, ¶¶ 27–28.)

ADA alleges that this Court has jurisdiction over this action, because in withdrawing the letter of credit funds, Big Rivers hand-delivered a letter containing misrepresentations to a Colorado bank in Colorado, thus harming ADA, a Colorado company. ADA claims that "the fraud claim occurred in Colorado and the harm was felt in Colorado, and this makes jurisdiction proper here." (ECF No. 32 at 5.) ADA maintains that Big Rivers knew that the Letter of Credit contained a Colorado choice of law provision and also knew that ADA was using a Colorado bank. (*Id.*) ADA claims that because the Letter of Credit was governed by Colorado law, it was subject to the UCC warranty set forth in C.R.S. § 4-5-110(a)(2) and Big Rivers violated these warranties in withdrawing the Letter of Credit funds. (*Id.* at 6.) According to ADA, this Court has personal jurisdiction because the UCC warranties arise under Colorado law. (ECF No. 32 at 7–8.) Additionally, ADA argues that Big Rivers had minimum contacts with Colorado by contracting with ADA and withdrawing the letter of credit funds from a Colorado bank. (*Id.* at 9–10.)

While it is not apparent that the Court has personal jurisdiction over Big Rivers for claims arising from the underlying Contract, the Court agrees that it has personal jurisdiction over Big Rivers for claims arising from its withdrawal of the Letter of Credit funds and can thus assert pendent personal jurisdiction over Big Rivers for claims arising under the Contract. *See Ward Petroleum Corp. V. Federal Deposit Ins. Corp.*, 903 F.2d 1297, 1299 ("The independence of the letter of credit from the underlying commercial transaction facilitates payment under the credit upon a mere facial examination of documents; it thus makes the letter of credit a unique commercial device which assures prompt payment."); *see also United States v. Botefuhr*, 309 F.3d 1263,

1272 (10th Cir. 2002.) ("Pendent personal jurisdiction, like its better known cousin, supplemental subject matter jurisdiction, exists when a court possesses personal jurisdiction over a defendant for one claim, lacks an independent basis for personal jurisdiction over the defendant for another claim that arises out of the same nucleus of operative fact, and then, because it possesses personal jurisdiction over the first claim, asserts personal jurisdiction over the second claim.")

However, the Court is not convinced that the District of Colorado is the most convenient forum for this action. The ultimate and central issue in this litigation is whether Big Rivers, a Kentucky entity, breached the Contract for the installation of a DSI system in Kentucky, which is governed by Kentucky law, when it withheld funds and withdrew Letter of Credit funds. ADA does business nationally,[1] and thus can expect to be haled into court outside of Colorado. (ECF No. 27 at 9.) The DSI system was delivered to Kentucky and ADA employees installed it in a Kentucky power plant. (ECF No 27 at 10.) Indeed, the DSI system has been operating for two years in Kentucky. (ECF No. 37 at 5.)

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In deciding whether to change venue, district courts must assess two issues: (1) whether the case might have been brought in the proposed transferee district, and (2) whether the "competing equities" weigh in favor of adjudicating the case in the that district. *See Hustler Magazine, Inc. v. U.S. Dist. Court*

---

[1] *See* http://www.advancedemissionssolutions.com/ADA-Products/Products-and-Services/Dry-Sorbent-Injection-Systems/default.aspx (last visited Feb. 8, 2018)

*for the Dist. of Wyo.*, 790 F.2d 69, 71 (10th Cir. 1986). As Big Rivers is headquartered in the Western District of Kentucky and the events giving rise to ADA's claim occurred in the Western District of Kentucky, this action could have been filed in the Western District of Kentucky. Thus the first issue of the analysis is easily met.

With regard to the second issue, the competing equities which the Court must consider include the following factors:

> (1) plaintiff's choice of forum; (2) the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; (3) the cost of making the necessary proof; (4) questions as to the enforceability of a judgment if one is obtained; (5) relative advantages and obstacles to a fair trial; (6) difficulties that may arise from congested dockets; (7) the possibility of the existence of questions arising in the area of conflict of laws; (8) the advantage of having a local court determine questions of local law; and (9) all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991) (quoting *Tex. Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967)).

The Court ordered the parties to show cause why it should not *sua sponte* transfer the case to the Western District of Kentucky, a venue with significantly greater connections to the parties, witnesses, and events relevant to this litigation. (ECF No. 36.) Both parties briefed the issue and the Court now considers each of the *Chrysler* factors in turn.

First, the Court agrees with ADA that Plaintiff's choice of forum weighs against transferring the case to Kentucky, because ADA filed this action in the District of Colorado. However, the second factor—accessibility of witnesses and other sources of

proof—weighs in favor of transfer. ADA makes two arguments regarding this factor. First, ADA argues that the bank witnesses are located in Colorado, ADA's employees are all located in Colorado, Big Rivers' key technical personnel are located in Illinois and Missouri, and the supplier of the hydrated lime is also located in Missouri. (ECF No. 38 at 4–6, 10.) The Court agrees with Big Rivers that no bank witnesses are likely to be necessary for the prosecution or defense of this case and the ADA witnesses and third party engineers who worked on the DSI system did so in Kentucky. (ECF No. 37 at 5.)

Next, ADA argues that the DSI system installed in Kentucky is not relevant for the disposition of this case, because "the conditions for the performance guarantee testing can never be replicated. Similarly stated, this is not a case in which the performance testing could be conducted using the proper hydrated lime at this point" because "the performance test is a start-up commissioning test to ensure functionality and it must be run within a certain time period after the commissioning." (ECF No. 38 at 6.) ADA claims that the most useful version of the DSI system for this case will be the scaled model of the DSI system currently stored with ADA's vendor in Michigan. (*Id.* at 10.) Big Rivers claims that "having a trial where the DSI project is located is 'practical' and will 'make a trial easy, expeditious and economical.'" (ECF No. 37 at 5.) The Court agrees with Big Rivers, but also notes that if ADA is correct in its assessment and the scaled model is indeed the most important version of the DSI system, Michigan is closer to Kentucky than to Colorado, making it easier to ship the model to the Western District of Kentucky than to the District of Colorado.

Turning to factor three—the cost of making the necessary proof—ADA argues

6

that if the case is transferred, it will need to retain counsel in Kentucky in addition to incurring travel costs, whereas Big Rivers is represented by a firm that has offices in Denver. (ECF No. 38 at 7.) While the Court acknowledges that transferring the case will impose additional costs on ADA, the Court also notes that the Local Rules for the Western District of Kentucky has a *pro hac vice* mechanism by which ADA's Colorado lawyer can litigate this case in the Western District of Kentucky. Joint W.D.Ky. Loc. Civ. Prac. R. 83.2.

The fourth factor—questions as to the enforceability of a judgment if one is obtained—is neutral. A judgment obtained in federal court may be enforced in any other federal court through a very simple "registration" process in the federal court where enforcement would take place. *See* 28 U.S.C. § 1963. Thus, there are no barriers to enforcement beyond minimal paperwork and nominal fees.

The fifth factor—relative advantages and obstacles to a fair trial—is also neutral. The District of Colorado and the Western District of Kentucky are equally capable of providing a fair trial.

The sixth factor—difficulties that may arise from congested dockets—weighs in favor of transfer. As ADA points out, according to the Tenth Circuit, "[w]hen evaluating the administrative difficulties of court congestion, the most relevant statistics are the median time from filing to disposition, median time from filing to trial, pending cases per judge, and average weighted filings per judge." *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1169 (10th Cir. 2010). The median time from filing to disposition and from filing to trial are lower in the District of Colorado, despite the fact that pending cases per judge and weighted filings per judge are significantly higher in

7

the District of Colorado. (ECF No. 38-5 at 2–3.)[2] Taking all four statistics into account, the Court finds that this factor ultimately favors transfer to the Western District of Kentucky.

As to the seventh factor—the possibility of existence of questions arising in the area of conflict of laws—the Court concludes that there is no question about which law applies. The parties agree that the Contract contains a Kentucky choice of law clause (ECF No. 27 at 9), while the Letter of Credit contains a Colorado choice of law clause (ECF No. 32 at 6). Thus, this factor is neutral.

ADA argues that the eighth factor—the advantage of having a local court determine questions of local law—weighs against transfer. (ECF No, 38 at 9.) Here, the Court notes that regardless of which District the case is tried in, the court will need to apply the local laws of the other state. If the case remains in the District of Colorado, this Court will have to apply the laws of Kentucky to resolve issues arising from the

---

[2] U.S. District Court—Judicial Caseload Profile (September 30, 2017) (ECF No. 38-5.)

|  | W.D.KY | D.CO |
|---|---|---|
| Pending Cases | 417 | 451 |
| Weighted Filings | 370 | 546 |
| Median time (months) filing to disposition (Criminal felony) | 12.2 | 8.7 |
| Median time (months) filing to disposition (Civil) | 23.5 | 7.0 |
| Median time (months) from filing to trial (civil only) | 29.8 | 23.9 |

Contract. Alternatively, if the case is transferred to the Western District of Kentucky, that court may need to apply Colorado law to resolve issues arising from the Letter of Credit. However, based on the record before the Court, it appears that in order to reach the fraud claim arising under the Letter of Credit, it is likely that a court will have to first resolve issues arising from the underlying Contract. Thus, because a court will initially have to apply Kentucky law, this factor weighs in favor of transferring the case to the Western District of Kentucky.

Finally, and for the record, the Court notes that it considered all of ADA's arguments under factor nine—those being all other considerations of a practical nature—under one or more of the other eight factors above.

The Court recognizes that all of the foregoing competing equities, considered together, are fairly evenly weighted. The Letter of Credit and the underlying Contract are inherently linked. While it is clear that the Court can assert personal jurisdiction over claims arising under the Letter of Credit, it will have to determine whether there was a breach of the underlying Contract. The Court finds that using the Letter of Credit as a hook to assert personal jurisdiction over Big Rivers for claims arising pursuant to the underlying contract is the legal equivalent of the Letter of Credit tail wagging the breach of contract dog, and the *Chrysler* factors need to be evaluated with this context firmly in mind. As such, in its discretion, the Court finds that *sua sponte* transfer of this case to the Western District of Kentucky is warranted and appropriate.

## Conclusion

For the reasons set forth above, the Court ORDERS as follows:

1. This case is *sua sponte* TRANSFERRED to the Western District of Kentucky;

2. To the extent that Defendant's Motion to Dismiss (ECF No. 27) argues that Plaintiff's Complaint (ECF No. 20) should be dismissed for lack of personal jurisdiction under Rule 12(b)(2), it is DENIED as moot; and

3. To the extent that Defendant's Motion to Dismiss (ECF No. 27) argues that Plaintiff's Complaint (ECF No. 20) should be dismissed for failure to state a claim under Rule 12(b)(6), it is DENIED without prejudice.

Dated this 12th day of February, 2018.

BY THE COURT:

_____
William J. Martínez
United States District Judge